**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **BAYMONT FRANCHISE SYSTEMS, INC.,** | |
| **Plaintiff,** | **Civil Action No.: 19-6954 (ES) (ADS)** |
| **v.** | **OPINION** |
| **SB HOSPITALITY PALM SPRINGS, LLC, *et al.*,** | |
| **Defendants.** | |

**SALAS, DISTRICT JUDGE**

Before the Court is Plaintiff Baymont Franchise Systems, Inc.'s ("Plaintiff") motion for default judgment against Defendants SB Hospitality Palm Springs, LLC ("SB Hospitality"), Nam Min Cho ("N. Cho"), and Hanhe Cho ("H. Cho") (collectively, "Defendants"). (D.E. No. 121). The motion is unopposed. The Court has carefully considered Plaintiff's submissions, as well as the balance of the record, and decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, the Court **GRANTS** Plaintiff's motion.

## I. BACKGROUND[1]

On September 29, 2016, Plaintiff, a Delaware corporation, entered into a franchise agreement ("Franchise Agreement" or "Agreement") with SB Hospitality for the operation of a 129-room Baymont® guest-lodging facility located at 390 S. Indian Canyon Drive, Palm Springs, California ("the Facility"). (Compl. ¶¶ 1, 7, 10). N. Cho and H. Cho offered a personal guaranty

[1] The Court has drawn the background described herein from Plaintiff's Complaint, (D.E. No. 1 ("Compl.")), as it must accept Plaintiff's factual allegations—other than those related to damages—as true by virtue of Defendants' default. *Barrett v. Tri-Coast Pharmacy, Inc.*, 518 F. Supp. 3d 810, 820 (D.N.J. 2021). The Court also incorporates by reference all factual background that the Honorable Michael A. Hammer, U.S.M.J. included in the Report and Recommendation that His Honor issued on July 14, 2025. (*See generally* D.E. No. 110 ("R&R")).

of SB Hospitality's obligations under the Franchise Agreement ("Guaranty"), (*id.* ¶ 20–22), and the Defendants co-made a Development Incentive Note for $50,000.00 ("Note"), (*id.* ¶¶ 23–27). SB Hospitality was obligated to operate the Facility for twenty years, but on June 5, 1028, it informed Plaintiff it would cease operations on July 31, 2018, "thereby unilaterally terminating the Franchise Agreement." (*Id.* ¶¶ 12, 28). In response, Plaintiff brought the instant suit against Defendants for breach of the Franchise Agreement, Guaranty, and Note, seeking outstanding recurring fees, liquidated damages, the outstanding principal balance of the Note, interest, attorneys' fees, and costs. (*Id.* ¶¶ 30–64).

Plaintiff alleges N. Cho and H. Cho both reside at 1555 Dab Court, Walnut, California. (*Id.* ¶¶ 3–4). SB Hospitality is a California limited liability company, and "N. Cho and H. Cho are the only constituent members of SB Hospitality." (*Id.* ¶¶ 2 & 5).

## II. PROCEDURAL HISTORY[2]

Plaintiff filed its Complaint on February 26, 2019, asserting seven causes of action against Defendants: (i) Accounting from SB Hospitality to Plaintiff; (ii) Breach of Contract for Liquidated Damages against SB Hospitality; (iii) Breach of Contract for Actual Damages against SB Hospitality[3]; (iv) Breach of Contract for Recurring Fees against SB Hospitality; (v) Unjust Enrichment against SB Hospitality; (vi) Breach of Contract against N. Cho and H. Cho for violating the Guaranty; and (vii) Breach of Contract and Unjust Enrichment against N. Cho and H. Cho for the outstanding principal balance of the Note. (*Id.* ¶¶ 30–64). On June 10, 2019, Defendants filed their Answer (D.E. No. 19 ("Answer")), which also included seventeen

---

[2] As with the factual background, and for the sake of efficiency, the Court incorporates by reference the procedural history that Judge Hammer included in His Honor's July 14, 2025 Report and Recommendation. (*See generally* R&R).

[3] Plaintiff asserts Count III (actual damages) in the alternative to Count II (liquidated damages), should the Court find that Plaintiff is not entitled to recover liquidated damages. (Compl ¶ 42).

affirmative defenses and a counterclaim containing four counts against Plaintiff: (i) "Breach of Contract"; (ii) "Breach of Warranty"; (iii) "Violation of New York Franchise Sales Act"; and (vi) "Tortious Interference with Prospective Advantage[.]" (*See* Answer at 16–18). On July 1, 2019, Plaintiff filed an Answer to Defendants' Counterclaim and Affirmative Defenses. (*See generally* D.E. No. 20). Plaintiff ultimately filed a motion for summary judgment on November 24, 2021, (D.E. No. 49), and Defendants opposed on January 3, 2022, (D.E. No. 54). On June 8, 2022, the Honorable Kevin McNulty, U.S.D.J., granted in part and denied in part Plaintiff's motion. (D.E. No. 59; D.E. No. 60).

After three unsuccessful settlement conferences and one failed mediation attempt, (*see* D.E. No. 38; D.E. No. 41; D.E. No. 68; D.E. No. 72), Defendants' attorney Evan M. Goldman ("Mr. Goldman") moved to withdraw as counsel, (*see* D.E. No. 74). Judge Hammer initially denied the motion without prejudice. (D.E. No. 75 at 2). On October 6, 2023, Mr. Goldman filed a renewed motion to withdraw, arguing that the court should relieve him as counsel because Defendants terminated him through a third-party attorney, thereafter stopped responding to him, and refused to pay for his services. (D.E. No. 76-1 at 5–6). On December 14, 2023, Judge Hammer held a hearing on Mr. Goldman's unopposed motion to withdraw, (D.E. No. 82 at 1 (noting there was "no objection to the motion by any [party,]")), and neither N. Cho nor H. Cho appeared, (R&R at 3). During that hearing:

> Mr. Goldman represented that he had emailed Defendants a copy of his motion to withdraw on October 6, 2023. Defendants responded "copy," noting receipt. At the conclusion of the hearing, the Court granted Defense counsel's motion and allowed Defendants sixty days to obtain new counsel. The Court directed that if H. Cho and N. Cho did not obtain new counsel, they would be deemed to be appearing pro se but cautioned SB Hospitality that because it is a corporate defendant it could not appear pro se. Thus, SB Hospitality's failure to obtain new counsel might necessitate the

> entry of default. . . . No new counsel appeared for Defendants despite several extensions and opportunities to do so.

(R&R at 3 (internal citations omitted)). Judge Hammer conducted a telephone hearing on March 7, 2004, during which Plaintiff requested that His Honor enter default against SB Hospitality for failure to retain counsel. (D.E. No. 84). On April 12, 2025, Judge Hammer entered an order denying that request and requiring SB Hospitality to retain new counsel by May 24, 2024. (*Id.*).

On July 25, 2024, Plaintiff moved to strike SB Hospitality's Answer and enter a default judgment against that entity for failure to comply with court orders, arguing that "SB Hospitality ha[d] failed to retain counsel or otherwise defend itself in this Action since the Court granted former defense counsel's Motion to Withdraw." (D.E. No. 89-2 ¶ 11). On September 11, 2024, Judge Hammer issued a Report and Recommendation suggesting that the Undersigned grant Plaintiff's motion, (D.E. No. 95 at 9), which the Court adopted in full in a letter order dated October 3, 2023, striking SB Hospitality's responsive pleading and directing the Clerk of the Court to enter default against it, (D.E. No. 99 at 2). The Clerk entered default against SB Hospitality the same day.

Following Mr. Goldman's withdrawal, N. Cho and H. Cho appeared in this matter pro se. (R&R at 4). Beginning in August 2024, however, Defendants stopped appearing for telephone conferences, (*id.*), which resulted in Judge Hammer issuing an Order to Show Cause on June 11, 2025 instructing that N. Cho and H. Cho respond in writing by June 30, 2025 explaining "why sanctions, including but not limited to striking their answer, any affirmative defenses, and counterclaims, and entering default against them and in favor of Plaintiff, should not be imposed against Defendants pursuant to Federal Rules of Civil Procedure 16(f) and 37, for failure to comply with this Court's Orders[,]" (D.E. No. 108 at 3). Defendants failed to timely respond, and Judge Hammer issued a Report and Recommendation recommending that the Court "strike Defendants

H. Cho and N. Cho's Answer, Counterclaims, and Affirmative Defenses, and enter[] default against them . . . ." (R&R at 8). On October 14, 2025, the Court adopted Judge Hammer's unopposed R&R in full, striking N. Cho and H Cho's Answer, Counterclaims, and Affirmative Defenses, directing the Clerk of the Court to enter default against those individuals, and further ordering Plaintiff to file a motion seeking default judgment against all three Defendants. (D.E. No. 111 at 2–3). On December 8, 2025, Plaintiff filed a Motion for Final Judgment by Default against all Defendants. (*See generally* Motion; D.E. No. 121-5 ("Motion Br.")). To date, no Defendants have responded.

## III. LEGAL STANDARD

A district court may enter default judgment against a party who has failed to plead or otherwise respond to the action filed against him. Fed. R. Civ. P. 55(b)(2). "[E]ntry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). "Before entering default judgment, the Court must address the threshold issue of whether it has personal jurisdiction and subject matter jurisdiction over the parties." *Prudential Ins. Co. of Am. v. Bramlett*, No. 08-0119, 2010 WL 2696459, at *1 (D.N.J. July 6, 2010). Then, "the Court must determine (1) whether there is sufficient proof of service; (2) whether a sufficient cause of action was stated; and (3) whether default judgment is proper." *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012) (citations omitted). In making these determinations, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). "While the court may conduct a hearing to determine the damages amount, Fed. R. Civ. P. 55(b)(2), a damages determination may be made

without a hearing as long as the court ensures that there is a basis for the damages specified in the default judgement." *Days Inns Worldwide, Inc. v. Panchal*, No. 15-1459, 2015 WL 5055318, at *2 (D.N.J. Aug. 25, 2015) (citation modified).

## IV. DISCUSSION

### A. Jurisdiction

#### i. Subject Matter Jurisdiction

The Court is satisfied that it has subject matter jurisdiction over this case. District courts have original jurisdiction over all civil actions in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and that are between citizens of different States. 28 U.S.C. § 1332(a). A corporation is deemed a citizen of every State where it is incorporated and of the State of its principal place of business. *Id.* § 1332(c). A limited liability company maintains the citizenship of each of its members. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). The citizenship of a natural person is determined by the state in which the person is domiciled. *Id.* at 104.

When filing the Complaint, Plaintiff asserted that subject matter jurisdiction was appropriate under § 1332(a) based upon the complete diversity of the parties and its contention that the amount in controversy exceeded $75,000. (Compl. ¶ 6). The record indicates that Plaintiff is a corporation "organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey." (*Id.* ¶ 1). Defendant SB Hospitality is a limited liability company "organized and existing under the laws of the State of California[.]" (*Id.* ¶ 2). Plaintiff alleged that Defendants N. Cho and H. Cho were citizens of California. (*Id.* ¶¶ 3–5). Defendants subsequently denied that H. Cho resided in California, "aver[ring] that Ms. Cho, at all times relevant to this action, was a resident of the State of New York." (Answer ¶ 4). The record

further reflects that N. Cho and H. Cho were the only members of SB Hospitality. (Compl. ¶ 5). Therefore, it appears that, at the time Plaintiff commenced this action, SB Hospitality was a citizen of California and New York. Based on the foregoing, the Court finds that there is complete diversity of citizenship between Plaintiff and all Defendants.[4]

Plaintiff originally alleged that "the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000." (*Id.* ¶ 6). The Complaint goes on to enumerate various assessments of damages, with liquidated damages amounting to $320,434.73, recurring fees amounting to $69,879.03, and the outstanding principal on the Note amounting to $42,857.14. (*Id.* at 7, 9, 11). Given the amount in controversy and the complete diversity of citizenship between Plaintiff and all Defendants, the Court finds that it has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

**ii. Personal Jurisdiction**

The Court next finds that it may exercise personal jurisdiction over Defendants. Effective service of process is the mechanism by which the court itself obtains personal jurisdiction over a defendant. *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700–01 (3d Cir. 1991) ("A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant."). As shown below, the Court finds that Plaintiff properly effected personal service on H. Cho, (D.E. No. 6), as well as service through regular and certified mail on N. Cho in his personal capacity and in his role as registered agent at SB Hospitality, (D.E. No. 7 ¶¶ 3–5, Ex. A, Ex. B, Ex. C). Additionally, forum selection clauses are "prima facie valid and should be enforced unless

[4] The record reflects that, by the time Plaintiff filed its motion for summary judgment, H. Cho was a resident of Lyndhurst, New Jersey. (D.E. No. 49-3 ¶ 4; D.E. No. 54-2 ¶ 4). However, citizenship for the purposes of diversity jurisdiction is determined at the time a case is commenced in federal court. *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 346 (3d Cir. 2013) (citing *Grand Union Supermarkets of the V.I., Inc. v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003)). Thus, Defendant H. Cho's subsequent move to New Jersey does not divest the Court of subject matter jurisdiction.

enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *The Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 10 (1972). In Section 17.6.3 of the Franchise Agreement, SB Hospitality consented and waived its "objection to the non-exclusive personal jurisdiction of and venue in . . . the United States District Court for the District of New Jersey for all cases and controversies under this Agreement or between [Plaintiff and SB Hospitality]." (Compl. Ex. A at 37). SB Hospitality does not argue that enforcing the forum selection clause would be unreasonable. (*See generally* Answer). In fact, Defendants withdrew their motion to dismiss or transfer the instant matter to the Central District of California. (*See* D.E. No. 12 (stipulation withdrawing Defendants' motion); D.E. No. 13 (consent order withdrawing Defendants' motion)). As for N. Cho and H. Cho, the Court finds that they consented to personal jurisdiction by signing the Guaranty, under which the parties "irrevocably and unconditionally" agreed that they are bound to the terms of the Franchise Agreement, including the forum selection clause. (Compl. Ex. A at 60–61, Ex. C); *see Baymont Franchise Sys., Inc. v. Lake Shore Hosp. Inc.*, No. 24-03253, 2025 WL 606166, at *3 (D.N.J. Feb. 25, 2025) (finding personal jurisdiction over a defendant who consented to a forum selection clause through a personal guaranty). Defendants are, therefore, subject to personal jurisdiction in this forum.

**B. Proper Service**

The Court finds that Plaintiff properly effectuated service on Defendants. Relevant here is Federal Rule of Civil Procedure 4(e)(1), which incorporates methods for service under the New Jersey Rules of Court. New Jersey Court Rule 4:4-4(b)(1), in turn, authorizes service by registered or certified mail—with return receipt requested—and at the same time, by ordinary mail to "(1) a competent individual of the age of 14 or over, addressed to the individual's dwelling house or usual place of abode . . . [and] (3) a corporation, partnership or unincorporated association that is

subject to suit under a recognized name, addressed to a registered agent for service, or to its principal place of business, or to its registered office."

Here, Plaintiff forwarded the Summons and Complaint to Recon Management Group ("Recon") to effectuate personal service of process. (D.E. No. 7 ("Aff. of Service") ¶ 3). Recon personally served the Summons and Complaint upon Han Cho, Defendant H. Cho's sister, on March 31, 2019. (D.E. No. 6 at 2). Despite its diligent attempts to reach Defendants SB Hospitality and N. Cho, Recon was unable to personally serve those two Defendants. (*See* Aff. of Service Ex. A). As such, Plaintiff's counsel served SB Hospitality and N. Cho by certified and regular mail, return receipt requested, on March 28, 2019. (*See* Aff. of Service Ex. B). Plaintiff's counsel then filed an affidavit of effectuated service executed on April 5, 2019 representing that he served Defendants SB Hospitality and N. Cho in accordance with Rule 4(e)(1). (*See* Motion at 6–7 (ECF pagination). *See generally* Aff. of Service). Plaintiff therefore successfully served all Defendants in this matter. Indeed, as described above, Defendants originally retained counsel and litigated this matter for a significant period of time before the Court struck their pleadings and entered default against them for failure to comply with various orders.

### C. Sufficient Cause of Action

Plaintiff seeks an entry of final judgment by default against Defendants SB Hospitality, N. Cho, and H. Cho. (Motion at 1 (ECF pagination)). Upon reviewing Plaintiff's factual allegations, the Court finds that Plaintiff has sufficiently stated claims for breach of contract against all Defendants.[5]

[5] Plaintiff does not ask the Court to enter default judgments against Defendants on its unjust enrichment claims. (*See* Motion at 7 (ECF pagination)). In any event, the Court need not analyze those claims, which concern the same damages as Plaintiff's breach of contract claims. (*See generally* Compl.); *Saiyed v. Archon, Inc.*, No. CV 16-9530, 2020 WL 7334190, at *7 (D.N.J. Dec. 14, 2020), *on reconsideration in part,* No. 16-cv-9530, 2021 WL 10718378 (D.N.J. Feb. 25, 2021) (""Because the Court already determined that Plaintiff is entitled to default judgment for his FLSA claims, the Court will not enter default judgment as to Count Eight. Plaintiff is not entitled to a double recovery.") (internal citations omitted).

Under New Jersey law, a plaintiff must prove four elements to establish a breach of contract:

> [F]irst, that the parties entered into a contract containing certain terms; second, that [the] plaintiff did what the contract required [the plaintiff] to do; third, that [the] defendant did not do what the contract required [the defendant] to do, defined as a breach of the contract; and fourth, that [the] defendant's breach, or failure to do what the contract required, caused a loss to the plaintiff.

*Woytas v. Greenwood Tree Experts, Inc.*, 237 A.3d 386, 392 (N.J. 2019) (quoting *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)). Here, Plaintiff alleges that: (i) the parties entered the Franchise Agreement, Guaranty, and other associated agreements, (Compl. ¶¶ 10–22); (ii) Defendants violated the terms of the Franchise Agreement, Guaranty, and Note when SB Hospitality told Plaintiff on June 5, 2018 that it would cease operations at the Facility, (*id.* ¶ 28); (iii) Defendants failed to pay liquidated damages, outstanding recurring fees, and the outstanding principal balance of the Note—all of which were due to Plaintiff under the Franchise Agreement and Guaranty in the instance that Defendants defaulted, (*id.* ¶¶34–39, 44–47, 52–64); and (iv) Plaintiff has been damaged by Defendants' failure to pay, (*id.* ¶¶ 39, 43, 47, 51, 64). Considering that the Court struck Defendants' Answer, (*see* D.E. No. 111), and that factual allegations "are treated as conceded by the defendant for purposes of a default judgment," *DIRECTV,* 431 F.3d at 165, and in light of Plaintiff's sworn representation that it "fulfilled all of its obligations under the Franchise Agreement . . . and Note[,]" (D.E. No. 121-4 ("Mallett Aff.") ¶ 20), the Court finds that the record supports Plaintiff's claim for breach of contract.

**D. Propriety of Default Judgment**

The Court next finds that it would be appropriate to enter default judgments against Defendants. To determine whether granting default judgment is proper, the Court must make

factual findings as to "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008). Once Mr. Goldman's motion to withdraw was granted, SB Hospitality stopped defending itself in this case, and a default has already been entered against it. Starting in August 2024, N. Cho and H. Cho failed to appear for conferences or respond to Judge Hammer's Order to Show Cause. At this point, Defendants' Answer, Affirmative Defenses, and Counterclaims have all been stricken. Thus, nothing in the record suggests that Defendants currently have any meritorious defenses against Plaintiff's claims. *See Malibu Media, LLC v. Deleon*, No. 15-3855, 2016 WL 3452481, at *3 (D.N.J. June 20, 2016) ("The Court may presume that a defendant who has failed to plead, defend, or appear has no meritorious defense.").

Moreover, Defendants' disappearance from this case has prejudiced Plaintiff, which has no other way to recover damages flowing from Defendants' breach of contract. *See Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012) (finding that the plaintiff would suffer prejudice if the court did not enter default judgment because the plaintiff "has no other means of seeking damages for the harm allegedly caused by [the d]efendant"). That prejudice is exacerbated here, as Plaintiff filed this case in 2019 and has had to wait an extended period for relief because of Defendants' initial participation in this action. Finally, with respect to whether Defendants' default was the result of their culpable conduct, the Court finds that nothing in the record indicates that Defendants' failure to participate in this case has been due to anything other than their own willful behavior. Defendants, who previously retained counsel and actively litigated this case for a time, obviously know this action exists. Moreover, Defendants knew their counsel had filed a motion for leave to withdraw, (R&R at 3), and the docket reflects that, post-

withdrawal, the Court mailed copies of its various opinions and orders directly to Defendants at their last-known addresses. Plaintiff likely sent Defendant copies of its motion for default judgment. (D.E. No. 121-1). Defendants are therefore solely responsible for their absence. *See, e.g.*, *Prudential Ins. Co. of Am. v. Taylor*, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009) (noting that the defendant is culpable when nothing suggests that anything other than the defendant's willful negligence caused the failure to answer). Based upon the foregoing, the Court finds that it would be appropriate to issue a default judgment in this case.

**E. Damages**

The only allegations in a plaintiff's complaint not treated as true upon the entry of a default judgment are those pertaining to the amount of damages. *Comdyne I, Inc.*, 908 F.2d at 1149. Under Federal Rule of Civil Procedure 55(b)(2), a district court "may conduct such hearings or order such references as it deems necessary and proper", *id.*, in order "to determine the amount of damages." Fed. R. Civ. P. 55(b)(2). If, however, the damages are for a "sum certain or a sum that can be made certain," further evidentiary inquiry is not necessary. Fed. R. Civ. P. 55(b)(1); *Comdyne I*, 908 F.2d at 1149. Here, Plaintiff seeks three categories of damages: recurring fees, liquidated damages, and the balance owed on the Note. (Motion Br. at 9-10). The Court will address each in turn.

**a. Recurring Fees**

The Court first considers Plaintiff's request for what it refers to as "recurring fees" owed under the Parties' agreements. (Motion Br. at 8). Plaintiff represents that those recurring fees "are computed pursuant to mutually agreed upon formulas set forth" in the parties' agreements. (*Id.*). Plaintiff has averred that Defendants owe recurring fees "in the current amount of $148,062.06 inclusive of interest (calculated at the legal rate of 1.5% per month pursuant to section 7.3 of the

Franchise Agreement) as of November 11, 2025." (Mallett Aff. ¶ 21). Plaintiff has also submitted an itemized statement supporting that calculation. (*Id.* at Ex. F). The Court therefore finds that Plaintiffs have established an entitlement to recover recurring fees in the total amount of $148,062.06.

**b. Liquidated Damages**

The Court next turns to Plaintiff's request for an award of liquidated damages. Reasonable liquidated damage clauses between commercial parties, in contexts similar to this case, are presumptively valid, and the burden is on the party opposing enforcement of the clause to demonstrate otherwise. *MetLife Cap. Fin. Corp. v. Wash. Ave. Assocs. L.P.*, 159 N.J. 484, 499 (1999); *Cent. Steel Drum Co. v. Gold Cooperage, Inc.*, 200 N.J. Super. 251, 265, *cert. denied*, 101 N.J. 303 (1985), *overruled on other grounds*, *Kutzin v. Pirnie*, 124 N.J. 500 (1991). A liquidated damages clause is valid where such a clause "constitute[s] a reasonable forecast of the provable injury resulting from [the] breach" and where harm "is incapable or very difficult of accurate estimate." *Wasserman's Inc. v. Middletown*, 137 N.J. 238, 249–50 (1994) (citation omitted). Here, the liquidated damages Plaintiff seeks as a remedy in connection with its breach of contract claim "do not require further inquiry and will be awarded by the Court." *Days Inns Worldwide, Inc. v. 5 Star, Inc.*, No. 09-1009, 2012 WL 1232340, at *6 (D.N.J. Apr. 11, 2012). The Court finds that the liquidated damages arising from the Franchise Agreement are for an agreed upon amount that is reasonable under the circumstances. *Id.*; (*see also* Mallett Aff. ¶¶ 22-26 (explaining the rationale behind the liquidated damages provision)).

Specifically, Plaintiff has established that it is entitled to liquidated damages in the principal amount of $320,434.80, calculated pursuant to Section 12.1 of the Franchise Agreement. That provision "set liquidated damages for the Facility at an amount equal to the average monthly

Royalties and System Assessment Fees since the opening date multiplied by 24." (*Id.* ¶ 27). "At the time of termination, the average monthly Royalty and System Assessment Fees since the opening date equaled $13,351.45." (*Id.*; *see also id.* at Ex. G (spreadsheet reflecting the relevant monthly fees)). That monthly average, multiplied by 24, equals $320,434.80. Plaintiff has also established that its damages include $466,633.06 in prejudgment interest calculated at 1.5% per month on the total $320,434.80 in liquidated damages from August 30, 2018, which is 30 days following the date of termination. (*Id.* ¶ 27). The prejudgment interest is also for a sum certain:

> [Plaintiff] is entitled to interest on this amount calculated at the legal rate of interest of 1.5% per month in the amount of $424,283.70 from August 30, 2018 (thirty (30) days from the date of termination) through January 5, 2026 (the anticipated return date of this Motion), which amounts to 2,685 days. The $424,283.70 figure is calculated by multiplying $320,434.80 by 18% per year, which equals $57,678.26 in interest per year. That amount is then divided by 365 days to equal $158.02 in interest per day. When the per diem interest of $ 158.02 is multiplied by 2,685 days, the interest owed equals $424,283.70.

(*Id.*; *see also* Motion Br. at 8-9). The Court notes that Plaintiff requested interest in the amount of $424,283.70 through January 5, 2026, the anticipated return date of this Motion. Because 268 days have passed in between January 5, 2026 and the date of this judgment, the amount in interest—calculated at a rate of $158.02 per day—now totals $466,633.06.

Plaintiff is therefore entitled to recover the liquidated damages in the principal amount of $320,434.80 and prejudgment interest in the amount of $466,633.06, for a total of $787,067.86.

**c. Amount Owed Under the Note**

Finally, the Court considers Plaintiff's request for amounts Defendants owe in connection with the Note. Plaintiff avers that "[a]t the time of termination, the outstanding, unamortized principal balance of the Note was $42,857.14." (Mallett Aff. ¶ 31). That full balance became due and owing once Defendants terminated the Franchise Agreement. (*Id.*). Moreover, "[p]ursuant to the terms

of the Note, if the Note is not paid within 10 days after it is due, the outstanding principal balance shall bear simple interest at a rate equal to the lesser of eighteen percent (18%) per annum." (Compl. ¶ 26). With regard to the interest owed on the note, Plaintiff avers as follows:

> [Plaintiff] is entitled to interest on this amount, calculated at the rate set in the Note of 18% per annum, in amount of $57,373.96 from August 1, 2018 (the due date of the Note) through January 5, 2026 (the return date of this motion), which amounts to 2,714 days. The $57,373.96 figure is calculated by multiplying $42,857.14 by 18% per year, which equals $7,714.29 in interest per year. That amount is then divided by 365 days to equal $21.14 (rounded down to the nearest cent) in interest per day. When the per diem interest of $21.14 is multiplied by 2,714 days, the interest owed equals $57,373.96.

(Mallett Aff. ¶ 32). The Court notes, however, that interest does not begin accruing on the Note until 10 days after payment became due. (Compl. ¶ 26). Therefore, interest did not begin accruing on the Note until August 11, 2018. In turn, as of January 5, 2026, interest had accrued on the Note for 2,703 days. Because 268 days have passed in between January 5, 2026 and the date of this judgment, the amount in interest—calculated at a rate of $21.14 per day—now totals $63,039.48.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for default judgment against Defendants. Specifically, the Court finds that Plaintiff is entitled to judgment in the amount of $1,041,026.54, consisting of the following: (1) recurring fees in the amount of $148,062.06 (inclusive of prejudgment interest); (ii) liquidated damages in the amount of $787,067.86 (inclusive of prejudgment interest); and (iii) $105,896.62 under the Note (inclusive of prejudgment interest). The Court will therefore enter judgment, in Plaintiff's favor and against all Defendants, in that amount. As the Court finds that any recovery on Plaintiff's unjust enrichment claim would be duplicative of the damages awarded herein, the Court will dismiss that claim and direct the

Clerk of the Court to **CLOSE** this case. An appropriate order follows.

Date: September 30, 2026

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**